510

LARRY JENNINGS et al., Plaintiffs, v. WESSEL CONSTRUCTION COMPANY, INC., et al., Defendants.—(TER-JAC CONSTRUCTION COMPANY, INC., Defendant and Third-Party Plaintiff-Appellant, v. THE UNITED CITY OF THE VILLAGE OF YORKVILLE, Third-Party Defendant-Appellee.)

Second District    No. 81-19

Opinion filed November 9, 1981.

James M. Wilson, of Ingemunson and Wilson, of Yorkville, for appellant.

Fred H. Dickson, of Goldsmith, Thelin, Schiller and Dickson, of Aurora, for appellee.

Mr. JUSTICE REINHARD delivered the opinion of the court:

Plaintiffs Larry and Peggy Jennings brought this suit against defendant Wessel Construction Company, Inc. (Wessel), and defendant Ter-Jac Construction Company, Inc. (Ter-Jac), for damages resulting from defects in the construction of their house and in the installation of the sewer system joining their house to the system of the city of Yorkville. Ter-Jac brought a third-party action against the United City of the Village of Yorkville (Yorkville), third-party defendant, alleging that Yorkville had assumed control of the sewer system and was therefore liable for repair of any defects in the system. In a bench trial the court below found for the Jennings and against both defendants, Wessel and Ter-Jac, in the original suit and awarded $2,862.50 as damages for the repair of the sewer line. In the third-party action, the court found for the third-party defendant Yorkville. The only appeal taken is by Ter-Jac on the judgment rendered against it in its third-party claim against Yorkville. The issue raised on appeal is whether upon the adoption and acceptance of the sewer system by Yorkville it became liable to Ter-Jac for the subsequent cost of repair of that system.

In late 1969 or early 1970, Ter-Jac approached the municipal authorities of Yorkville for the purpose of annexing some property to Yorkville and developing a shopping center and residential subdivision, known as Countryside, thereon. Jack Purcell, president of Ter-Jac, retained several professional firms to assist in the project, including the consulting engineers for Yorkville, Walter Deuchler and Associates. Walter Deuchler made full disclosure to both Ter-Jac and Yorkville of its responsibilities to each party and accepted employment by both parties. Pursuant to this dual employment, Walter Deuchler and Associates proceeded to prepare the engineering drawings and specifications for the improvements in the subdivision, including the sanitary sewer system. Walter Deuchler also prepared the Environmental Protection Agency (EPA) permit application.

Ter-Jac and Yorkville agreed that upon completion of the public improvements, and in particular the sanitary sewer system, Yorkville would accept, own and operate all improvements located within the boundaries of the streets. It is not clear whether this agreement was in writing or not and no copy of it is found in the record. It was Yorkville's policy to be responsible for repairs in the sewer system which occurred in the street after acceptance, but the property owner would be responsible for repairs to the sewer line on his own property.

Before accepting the sewer system, Yorkville inspected the entire system by lowering a television camera into the system to check for faults. However, this method does not allow the spurs off to the homes, but under the street area, to be inspected. It appears that the camera cannot maneuver those turns. The sanitary sewer system was accepted by Yorkville in a letter to Ter-Jac dated September 21, 1973.

In May 1978, Wessel purchased about 25 lots in the Countryside subdivision from Ter-Jac. Thereafter, Wessel constructed houses on these lots, particularly on the lot located at 103 E. Countryside Drive, which was ultimately sold to Larry and Peggy Jennings, plaintiffs, in April 1979.

Shortly after the Jennings moved into the house, they began experiencing problems with the sewer system. They also noticed a sagging roof, a problem which does not pertain to this appeal. They contacted both Wessel and Yorkville to correct the sewer problem, but neither were able to find the source of the problem. Finally, the Jennings themselves hired Ken Swanson, a plumber and an excavator, to locate the problem. He dug at the edge of the Jennings' yard and approximately four feet into the street area before he discovered a crushed sewer tile which was causing the backups.

This crushed tile had not been discovered until the Jennings' problem arose. It was in a spur leading from the main sewer to the connection with the Jennings' house and had not been in use from the time of construction

in the early 1970's until the Jennings began using their facilities when they moved into the house. There are two theories concerning how the tile was crushed. Ken Swanson believed that a large rock had crushed the tile, but no rock large enough was found during the excavation. The other theory, maintained by another sewer contractor who was present at the excavation, is that a tiny hairline fracture existed in the tile when it was laid during construction and the pressure from the earth around it caused the tile to crumble.

The Jennings paid Mr. Swanson for his work and subsequently brought suit against Wessel for breach of implied warranty of habitability for both the defects in the roof and in the sewer connection and against Ter-Jac for negligence in construction of the sewer system. Ter-Jac then filed a third-party complaint against Yorkville alleging that Yorkville was liable for the house connection repair since it had accepted control of the sewer system six years prior to the suit. Ter-Jac based its third-party complaint on the fact that Yorkville had inspected and accepted the sewer system thereby assuming the care, custody, and control of the sewer system, and thus releasing Ter-Jac from any liability.

At the close of the bench trial, the court specifically found that third-party defendant, Yorkville, was not the principal for the defendant, third-party plaintiff, Ter-Jac, in the construction of the sewer lines. The court also found that Ter-Jac was guilty of negligence in the construction of the sewer lines and as the direct and proximate cause of this negligence the plaintiffs, the Jennings, were damaged. The trial court also found against defendant Wessel on a breach of warranty of habitability for damage incurred by the broken sewer line, but found for Wessel as to the defect in the roof. The damages for repair of the sewer system were found to be $2,862.50. The trial court also found that Yorkville had been negligent in not inspecting the sewer system for five years or immediately prior to issuing the occupancy permits, but that the evidence was not sufficient to establish said negligence was the cause of the Jennings' damage.

The essence of Ter-Jac's contention on appeal, as we perceive it, is that upon completion of the sewer system, Yorkville inspected and then accepted ownership of it and all other improvements located within the boundaries of the street; that Yorkville would maintain and repair the sewer system; that if it was necessary to repair any portion of the sewer system under the street, that Yorkville would be responsible for it; and that since the trial court also found Yorkville to have been negligent, Yorkville was liable for the cost of repairs paid by the Jennings. Ter-Jac does not assert that any written indemnity agreement existed between it and Yorkville, nor does it base its third-party claim on an implied indemnity theory.

The whole basis of Ter-Jac's appeal is that Yorkville alone is liable to

the Jennings because it accepted ownership of the sewer system and Yorkville's policy of being responsible for repairs to the sewer system within the street. Yet Ter-Jac has not appealed the judgment for the Jennings, and against it, in the original suit which was based upon Ter-Jac's negligent construction of the sewer system. It is well established that a third-party complainant cannot tender a new defendant to the plaintiff. (*Muhlbauer v. Kruzel* (1968), 39 Ill. 2d 226, 230, 234 N.E.2d 790; *Vassolo v. Comet Industries, Inc.* (1975), 35 Ill. App. 3d 41, 47, 341 N.E.2d 54.) Simply stated, this is exactly what Ter-Jac is attempting to do. Ter-Jac argues that when Yorkville accepted the sewer system, it was relieved of any liability for defects in the sewer system. To the extent that Ter-Jac is attempting to use section 25(2) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 25(2)) as a device for tendering Yorkville as a new defendant directly to the Jennings, Ter-Jac is clearly exceeding the scope of that section. Any cause of action which Ter-Jac has against Yorkville must be based upon a legal theory entitling it to recover against Yorkville.

Ter-Jac has cited section 9—2—112 of the Illinois Municipal Code (Ill. Rev. Stat. 1979, ch. 24, par. 9—2—112) in support of its theory that Yorkville is liable to it. That section states, *inter alia*:

> "The acceptance by the board [of local improvements] of any improvement shall be conclusive in the proceeding to make the assessment, and in all proceedings to collect the assessment, or installments thereof, on all persons and property assessed therefor, that the work has been performed substantially according to the requirements of the ordinance therefor. But if any property owner is injured by any failure so to construct the improvement, or suffers any pecuniary loss thereby, he may recover the amount of the injury in a civil action against the municipality making the improvement, if the action is commenced within one year from the date of the acceptance of the work by the board of local improvements."

Ter-Jac contends that in this section "the legislature has seen fit to place a property owner's sufferance of pecuniary loss caused by public improvements upon the municipality which has accepted the improvements and which collects assessments from the public's use of those improvements." What Ter-Jac fails to recognize is that the statute pertains to a property owner's right to collect from the municipality "within one year from the date of the acceptance of the work by the board of local improvements." (Ill. Rev. Stat. 1979, ch. 24, par. 9—2—112.) In the case at bar, the Jennings clearly did not bring suit against Yorkville. Further, this statute does not pertain to the situation presented by Ter-Jac, where a pre-existing sewer is faulty, but to suits by a property owner against the

municipality where the improvement upon which an assessment has been levied is faulty. (*People ex rel. Thompson v. Gage* (1908), 233 Ill. 447, 84 N.E. 616; *Price v. Board of Local Improvements* (1914), 187 Ill. App. 629, *aff'd* (1914), 266 Ill. 299, 107 N.E. 611.) That is not the case here, and the statute obviously does not apply.

In further support of its claim against Yorkville, Ter-Jac relies upon a statement in 9 Ill. L. & Prac. *Cities, Villages & Other Municipal Corporations* §554 (1954), which reads as follows:

> "A municipal corporation is not liable for negligence in the construction or maintenance of a sewer or drain unless such sewer or drain has been constructed or adopted by the municipal corporation."

Assuming that to be a correct proposition of law, this certainly cannot be so broadly construed to support a claim by Ter-Jac against Yorkville. Moreover, a case relied upon by Ter-Jac in its brief in support of the above-quoted proposition, *Burford v. Village of La Grange* (1967), 90 Ill. App. 2d 210, 234 N.E.2d 120, is also a suit by a property owner directly against a municipality. Under the pleadings and facts presented here, Ter-Jac has failed to show that it can recover against Yorkville.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

VAN DEUSEN and UNVERZAGT, JJ., concur.